Anthony L. Martin
Nevada Bar No. 8177
anthony.martin@ogletreedeakins.com
Noel M. Hernandez
Nevada Bar No. 13893
noel.hernandez@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800
Fax: 702.369.6888

*Attorneys for Defendant Levi Strauss & Co.*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JERMAINE WHITFIELD, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LEVI STRAUSS & CO.; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 2:25-cv-01205-CDS-NJK<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendant Levi Strauss & Co. ("Defendant" or "Levi"), by and through its undersigned counsel, hereby moves to dismiss Plaintiff Jermaine Whitfield's ("Plaintiff") First Amended Complaint ('FAC'). (ECF No. 31.)

/ / /

/ / /

/ / /

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800

This Motion is based on the attached Memorandum of Points and Authorities, all pleadings and documents on file with the Court, and any argument that the Court deems proper.

DATED this 2nd day of January, 2026.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**


*/s/ Noel M. Hernandez*
Anthony L. Martin
Nevada Bar No. 8177
Noel M. Hernandez
Nevada Bar No. 13893
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV  89135

*Attorneys for Defendant Levi Strauss & Co.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff was a warehouse worker at Levi's Henderson Distribution Center in Nevada. Plaintiff has never worked at any other Levi location, including the Distribution Centers located in Kentucky and Mississippi. As a warehouse worker, he was represented by Workers United and Western States Regional Joint Board Workers United, SEIU Local 711, which is specific to the Henderson Distribution Center. As such, at the times relevant to the allegations in the Complaint, the terms and conditions of his employment were governed by collective bargaining agreements ("CBAs") between Levi and the Union as relevant only to the Henderson Distribution Center.

Plaintiff's First Amended Complaint ("FAC") contains four causes of action which he has styled as follows: (1) Failure to Pay Wages for Each Hour Worked in Violation of NRS 608.016; (2) Failure to Pay Overtime in Violation of NRS 608.018; (3) Failure to Timely Pay All Wages Due at Termination in Violation of NRS 608.020; and (4) Failure to Pay Overtime in Violation of the Fair Labor Standards Act, 29 U.S.C. § 207.[1]

---

[1] Plaintiff's Causes of Action are listed incorrectly on the caption page of his FAC. Levi lists the Causes of Action in the order they are in throughout the Complaint.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.360.6800

As set forth in more detail below, Plaintiff's First, Second, and Third Causes of Action are limited to employees at the Henderson Distribution Center and should be dismissed because these claims are preempted. Although Plaintiff avoids any mention to the CBAs in his Complaint, his claims are based on rights created by the CBAs. Their resolution depends upon, and would require this Court to interpret, the collective bargaining agreement. Plaintiff's Nevada state law claims are therefore preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, *see Firestone v. Southern California Gas Co.,* 281 F.3d 801, 802 (9th Cir. 2002).

Further, Plaintiff's FAC seeks to expand his Fourth Cause of Action, under the FLSA, to include current and former Levi employees in Kentucky and Mississippi. Plaintiff's generic allegations are that the Distribution Centers in Kentucky and Mississippi are "functioned similarly" to the Henderson Distribution Center and therefore employees at the other Distribution Centers are also subjective to overtime wages. This is simply not true. This threadbare allegation provides no factual basis to support the inclusion of additional distribution centers, where Plaintiff never worked, and that are unrelated to the Henderson Distribution Center. This allegation requires this Court to *guess* if and how Levi violated the FLSA on a nationwide basis. There are simply no factual allegations to support Plaintiff's cause of action.

Moreover, the Court should dismiss Plaintiff's Fourth Cause of Action because the Court lacks general jurisdiction over Levi and there is no specific jurisdiction over the Mississippi and Kentucky distribution centers. This conclusion follows from the Supreme Court's decisions in *Daimler AG v. Bauman*, 571 U.S. 117 (2014) and *Bristol-Myers Squibb Company v. Superior Court of California*, 582 U.S. 255 (2017), the federal rules governing service and personal jurisdiction, and controlling circuit authority applying those principles to FLSA collective actions. The FAC confirms the jurisdictional defect by pleading a nationwide collective predicated on out-of-state distribution centers and absent any "at home" basis in Nevada for general jurisdiction over Levi. (ECF No. 31, FAC, ¶ 4.)

On these bases, Levi respectfully requests that this Court grant its Motion to Dismiss.

/ / /

/ / /

## II.    LEGAL STANDARDS

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not satisfy this standard. *Ashcroft v. Iqbal,* 129. S. Ct. 1937, 1950 (2009). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* Rather, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. In short, a plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 570. If they fail to do so, the claims should be dismissed.

Further, FRCP 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A court may exercise jurisdiction over a nonresident defendant only if it has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

## III.    SUMMARY OF FACTUAL ALLEGATIONS[2]

Plaintiff was employed by Levi at its Henderson Distribution Center as a warehouse worker. (ECF No. 31, FAC, ¶¶ 13-14.) During his employment, Plaintiff was represented by Workers United ("Workers United Union") and Western States Regional Joint Board Workers United, SEIU Local 711 (the "Henderson DC Union"). (ECF No. 4, Exhibits A and B.) At all times relevant to the Complaint, the terms and conditions of his employment were governed by CBAs.

---

[2] Levi disputes the claims and allegations contained in the FAC. For purposes of a motion to dismiss, however, the Court must take Plaintiff's allegations as true. Thus, the summary of facts set forth herein is drawn exclusively from the FAC, with the only additional information set forth in this factual summary related to the attached CBAs. It is well-established that such materials can be considered when a motion is brought pursuant to Section 301 of the LMRA. *See, e.g., Van Buskirk v. CNN,* 284 F.3d 977, 980 (9th Cir. 2002).

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.369.6800

The CBAs contain a variety of provisions which cover the full spectrum of the employment relationship between members of the bargaining unit, such as Plaintiff and Levi. *See id.*

The applicable CBAs govern the manner in which overtime compensation is paid in Henderson, Nevada. (ECF No. 4, Exhibit B, Article 5.2 to 5.4, pp. 14-17.)

Further, the CBAs contain a comprehensive dispute resolution procedure for covered bargaining unit employees at the Henderson Distribution Center. (ECF No. 4, Exhibit B, Article 6.1 at pp. 19-22.) Disputes generally begin when an employee in the bargaining unit files a "Step 1" request to meet with his or her manager regarding a potential violation of the CBA. (*Id.*) If the dispute is not resolved during the Step 1 process, the Union may then file a formal written grievance which describes the dispute. (*Id.*) The Employer and Union representatives meet to discuss the grievance during a meeting. (*Id.*) If the parties do not resolve the grievances during or after the meeting, the parties may mutually agree to mediate the grievance. (*Id.*) The Union or Levi may then submit the matter to formal arbitration under the CBA. (ECF No. 4, Exhibit B, Article 7 at p. 22.)

Plaintiff's FAC contains four classes which he seeks to represent: (1) the "Overtime Class" which is defined as "all current and former hourly workers employed by Defendant at the Henderson Distribution Center at any time during the period from March 3, 2021 until the date of judgment who were paid overtime at less than 1.5 times the regular rate of pay" (ECF No. 31, FAC, ¶ 5); (2) the "Waiting Time Class," which is defined as all current and former hourly workers employed by Defendant at the Henderson Distribution Center at any time during the period from March 3, 2021 until the date of judgment who were not paid for pre-shift time" (ECF No. 31, FAC, ¶ 6); (3) the "Nevada Class," defined as "all former hourly workers and re-hired workers employed by Defendant at the Henderson Distribution Center at any time during the period from March 3, 2021 until the date of judgment who were not paid all wages due and owing upon termination" (ECF No. 31, FAC, ¶ 7); and (4) the "National Collective Members," defined as "all current and former hourly workers employed by Defendants at any time during the period from March 3, 2021 until the date of judgment who work or worked overtime at Distribution Centers in Kentucky, Mississippi, and the Henderson Distribution Center." (ECF No. 31, FAC, ¶ 9.)

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.369.6800

## IV.    LEGAL ARGUMENT

### A.    Plaintiff's Second Cause of Action Fails Because Nevada's Overtime Statute Does Not Apply to Employees Covered by A CBA Which Provides for Overtime.

NRS 608.018(1)-(2) states:

1. An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate less than 1 1/2 times the minimum rate set forth in NRS 608.250 works:

>  (a) More than 40 hours in any scheduled week of work; or

>  (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

2. An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate set forth in NRS 608.250 works more than 40 hours in any scheduled week of work.

While NRS 608.018 sets forth certain overtime rates that employers must pay, it provides an exception to "[e]mployees covered by collective bargaining agreements which *provide otherwise* for overtime." NRS 608.018(3)(e). A CBA qualifies for the overtime exemption so long as it provides overtime in a different way or manner than NRS 608.018(1)-(2). *Martel v. HG Staffing, LLC*, 138 Nev. 602, 611 (2022).

Here, the Henderson DC Union CBA provided overtime in a different way or manner than NRS 608.018(1)-(2) because it set up an independent overtime scheme. Section 5.2 "Overtime Compensation" states:

>  The Company will provide overtime pay for hours worked that exceed the Associates regular scheduled work hours. Regular scheduled work hours can be either: 8 hours for 5 days; 10 hours for 4 days; or 12 hours for 3 days.

>  - Associates working extended hours in addition to their regular scheduled 8, 10, or 12 hour work day – A rate of one & one-half time their rate of pay will be paid to the Associate.

>  - Associates scheduled to work on the 1st day after their regular scheduled work day – A rate of one & one-half time their rate of pay will be paid to the Associate.

- Associates scheduled to work on the 2nd, 3rd, or 4th day after their regular scheduled work day – A rate of two times their rate of pay will be paid to the Associate.

(ECF No. 4, Exhibit B, Section 5.2.) Given that the CBA provided overtime in a different manner, Plaintiff's claims for unpaid overtime cannot be asserted under NRS 608.018 and this claim must be dismissed.

**B.    Application of Plaintiff's First, Second, and Third Causes of Action Are Grounded In And Turn On the Interpretation of the CBA, And Therefore, Must Be Dismissed.**

Plaintiff's First Cause of Action alleges Levi failed to pay Plaintiff and putative class members for waiting in line to swipe in and start his shift. (ECF No. 31, FAC, ¶¶ 59-60.) Plaintiff's Second Cause of Action alleges that the regular rate of pay for Plaintiff and putative class members should be based on all compensation and remuneration received by Plaintiff within a given pay period, including bonus pay. (*Id.* at ¶¶ 63.)  Plaintiff further alleges he and putative class members worked over 40 hours per workweek or daily overtime without being paid overtime at the correct overtime rate. (*Id.* at ¶ 64.) Plaintiff's Third Cause of Action derives from his first two and alleges that by failing to compensate Plaintiff and putative class members for all overtime hours worked, Levi failed to timely remit all wages due and owing to Plaintiff and putative class members. (*Id.* at ¶ 71.)

Section 301 of the LMRA, 29 U.S.C. § 185(a), provides for exclusive jurisdiction of "[s]uits for violation of contracts between an employer and a labor organization" in the federal courts. In 1976, the United States Supreme Court expressly extended the reach of the LMRA to also include "suits by and against individual employees ...." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976). Longstanding interpretation of Section 301 holds that such suits by individual employees typically "encompass those seeking to vindicate 'uniquely personal' rights of employees such as *wages, hours, overtime pay*, and wrongful discharge." *Id.* (emphasis added).

Any state law claim that requires interpretation of a collective bargaining agreement falls within the purview of Section 301. "The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement ... and

any state claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pacific Racing Ass 'n.*, 854 F.2d 1142, 1146 (9th Cir. 1988*); see also Voorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in which the Supreme Court has found that Congress intended completely to replace state law with federal law for purposes of federal jurisdiction.") Section 301 of the LMRA gives Federal District Courts exclusive jurisdiction over suits for violations of collective bargaining agreements, and to that end, it preempts any state law claim that is "substantially dependent on the terms of an agreement made between parties to a labor contract[.]" *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220 (1985).

When deciding whether a claim is preempted under Section 301 of the LMRA, a court must engage in a two-part analysis. *See Burnside v. Kiewitt,* 491 F.3d 1053, 1059 (9th Cir. 2007). First, the court should make "inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and…[the court's] analysis ends there." *Id.* (citations omitted). Second, even if the right asserted "exists independently of the CBA…[the court] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective bargaining agreement.'" *Id.* (citation omitted). In short, state law claims like Plaintiff's overtime claim are preempted "if the plaintiff['s] claim is either grounded in the provisions of the labor contract *or* requires interpretation of it." *Id.* at 1059; *see also Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008); *Firestone v. S. California Gas Co.,* 281 F.3d 801, 802 (9th Cir. 2002) (state law claims are preempted when interpretation of an existing provision of the CBA "can reasonably be said to be relevant to the resolution of the dispute")' *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405-06 (1988) (Section 301 preempts state law claims based upon obligations created by a collective bargaining agreement.)

Moreover, the LMRA guarantees a "federal right to decide who is to resolve contract disputes." *Colum. Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union,* 23 F.4th 836, 843 (9th Cir. 2022) (citing *Allis-Chalmers Corp,* 471 U.S. at 211.) Therefore, when a claim turns in substance on the provisions of the CBA rather than on an independent statutory right, the claim

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.360.6800

must be directed to the property adjudicator – an arbitrator. *Id.*

In his FAC, Plaintiff makes no reference to the CBAs. However, Courts in this Circuit have consistently rejected such transparent attempts to avoid preemption. Under the well-established "artful pleading" doctrine, a plaintiff may not avoid Section 301 preemption by omitting from the complaint any reference to the applicable CBA or federal labor law. *Stallcop v. Kaiser Found. Hosp.,* 820 F.2d 1044, 1048 (9th Cir. 1987). Instead, the district court must look beyond the face of the complaint to determine whether the plaintiff's claims are either based on rights created by, or require an interpretation of, a CBA. *See id.* at 1048-49 (stating that "if the complaint actually raises a section 301 claim on the collective bargaining agreement, even though it is framed under state law, the claim is preempted"); *see also Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997-98 (9th Cir. 1987) (concluding that the district court "properly looked beyond the face of the complaint to determine" whether plaintiff's claim was preempted under Section 301).

Plaintiff's claims must be dismissed because they require an interpretation of the CBAs. Specifically, the CBAs mandate shift differentials, wage rates, attendance, earned hour, jobs with premiums, annual incentive plans, eligibility, goals and objectives, timing of awards, modification of work assignments, daily workload balancing, job bidding, shift/configuration change, overtime compensation, overtime work allocation, rest periods, lunch periods, pay for hostler, trainer premium, average hourly rate, jury duty pay, training, premium pay, alternating week schedule, ravel time (ECF No. 4, Exhibit A, Article 17, Side Letters pp. 84-88; Exhibit B, Articles 4, 5, 10, Side Agreements, pp. 32-33, 38, 40.) The very basis of Plaintiff's claims are reliant on the CBAs and the interpretations thereof. *Firestone,* 281 F.3d at 802 (affirming that resolution of plaintiffs' state law wage and hour claim would require interpretation of the agreement and are thus preempted.)

In sum, Plaintiff's Nevada state law claims are inextricably intertwined with the terms and meaning of the CBAs to which he, the class he purports to represent, and Levi, are bound and which cannot be resolved without interpretation of the CBA and, therefore, Plaintiff's claims are preempted.

/ / /

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.360.6800

1

2

**C.    Plaintiff's Fourth Cause of Action Must Be Dismissed Because The FAC Lacks Any Factual Allegations To Expand the Collective Beyond the Henderson Distribution Center.**

3

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

4

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009). "The tenet that a

6

court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause

7

of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Under Fed.

8

R. Civ. P. 8(a), plaintiffs are required to set forth allegations in their complaints describing a

9

factual scenario that shows the pleader has a plausible (not merely possible) legal claim to relief.

10

*Iqbal, 556 U.S.* at 678-79.

11

The FAC defines a "National Collective" consisting of hourly workers at Levi's

12

distribution centers in Kentucky, Mississippi, and Henderson during the alleged FLSA period.

13

(ECF No. 31, FAC, ¶ 9.)  Plaintiff expressly alleges membership in that expanded collective. (*Id.,* ¶

14

10.) But all operative factual allegations that describe any timekeeping mechanics, pre-shift

15

"waiting time," or swipe-in processes are confined to Henderson alone. (*Id.,* ¶¶ 21, 24-43.)

16

Plaintiff alleges Henderson required workers to swipe security cards to begin and end shifts, that

17

there were insufficient card readers at Henderson, that workers waited five or more minutes in line

18

at Henderson, and that some arrived early and "swiped in" before shift to avoid lines at Henderson

19

- all without compensation. (*Id.*) He labels this Henderson-only experience as "Waiting Time."

20

(*Id.,* ¶¶ 24-33.)   Nowhere does the FAC allege the presence - or absence - of security card readers

21

at any Kentucky or Mississippi facility, nor any lines, delays, or uncompensated pre-shift work at

22

those locations.

23

As to the Kentucky and Mississippi Distribution Centers, the FAC alleges only that Levi

24

operated centers that purportedly functioned like the Henderson facility. (*Id.,* ¶¶ 18-20.) That

25

generic statement does not identify any FLSA-implicating policy at those facilities, much less one

26

that mirrors Henderson's alleged card-reader shortages or pre-shift practices. A facility's general

27

function (*e.g.*, fulfilling orders) is not the same as a facility's timekeeping, payroll, or overtime

28

practices, and the FAC alleges no facts about the latter for Kentucky or Mississippi. In short, the

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.360.6800

FAC offers Henderson-specific facts, but no Kentucky or Mississippi facts, inviting the Court to speculate as to what happened elsewhere.

Because there are no factual allegations identifying any wage and hour issues at the Kentucky and Mississippi distribution centers, Levi and this Court are left to guess as to the basis of these claims. If Plaintiff's FLSA theory is premised on Henderson's alleged shortage of security card readers, the FAC does not allege the existence, number, location, or adequacy of card readers at any Kentucky or Mississippi facility. The FAC is silent about whether those facilities even used the same card-based timekeeping, whether they experienced lines, whether workers arrived early to avoid lines, or whether any pre-shift time went uncompensated at those sites. Absent such facts, there is no plausible basis to extend a Henderson swipe-in theory to Kentucky and Mississippi.

The FAC likewise fails to allege any facility-wide or multi-state facts concerning overtime rate calculations. Plaintiff claims he personally received certain bonuses at Henderson - labeled "dc aip"- and then provides individualized math for two Henderson pay periods to argue his own overtime was underpaid. (*Id.,* ¶¶ 38-39.) The pleading states that the "dc aip" bonus was not included in calculating his regular rate and references two later "retro pay" entries that he admits require "further examination" to determine their nature and effect. (*Id.*) Beyond these personal and tentative allegations, the FAC only asserts, in conclusory fashion, that Levi "paid workers in the Distribution Center Workforce according to the same formula," without identifying the formula or pleading facts showing that Kentucky or Mississippi employees received the same bonuses, were subject to the same regular-rate methodology, or experienced the same alleged omission of non-discretionary remuneration from their regular rates. There is no allegation of any Kentucky or Mississippi pay stub, bonus line item, plan document, policy language, or exemplar calculation. Given that Plaintiff did not work at any of these other facilities, the absence of underlying facts is not surprising. That is insufficient to plausibly support an expanded FLSA collective based on regular-rate miscalculation.

The FAC's reliance on Henderson-only details, coupled with conclusory language about similarity elsewhere, is insufficient to state a plausible nationwide FLSA claim or to sustain collective allegations directed at facilities for which no concrete overtime or timekeeping facts are

pled. At minimum, for a claim to survive, Plaintiff should be required to plead facility-specific facts as to Kentucky and Mississippi - identifying the alleged policies, their mechanisms, how they affected overtime compensation, and representative pay periods - before the Court allows any collective scope beyond the Henderson Distribution Center. In reality, Plaintiff could never include such allegations because his experience was uniquely governed by the Henderson CBA, which was inapplicable at any other work locations of Levi. Notably, Plaintiff has failed to plead with any factual certainty whether the other distribution centers in Kentucky and Mississippi are also subject to the Henderson Distribution Center's CBA (which they are not) or whether they had their own CBA, or none at all. Accordingly, given the lack of any factual basis for the claims at the out of state facilities, this Court should dismiss Plaintiff's Fourth Cause of Action. *Iqbal, 556 U.S.* at 678-79.

**D.    Plaintiff's Fourth Cause of Action Must Be Dismissed Because The Court Lacks Jurisdiction to Adjudicate a Nationwide FLSA Collective**

Personal jurisdiction comes in two forms, general and specific. *Harrington v. Cracker Barrel Old Country Store, Inc.,* 142 F.4th 678, 685 (2025). General jurisdiction lies only where a corporate defendant is "fairly regarded as at home," typically its place of incorporation and principal place of business. *Daimler,* 571 U.S. at 122. Specific jurisdiction requires a relationship among the defendant, the forum, and the litigation - i.e., the claims must arise out of or relate to the defendant's forum contacts. *Walden v. Fiore,* 571 U.S. 277, 284 (2014).

**1.    This Court Does Not Have General Jurisdiction Over Levi**

The Court should dismiss Plaintiff's Fourth Cause of Action because the forum lacks general jurisdiction over Levi. Plaintiff is unable to establish general jurisdiction because the FAC alleges that Levi is incorporated in Delaware and headquartered in San Francisco, California, not Nevada. (ECF No. 31, FAC, ¶ 4.)  Those allegations foreclose general jurisdiction in Nevada. *Harrington,* 142 F.4th at 685. Accordingly, Plaintiff must establish specific jurisdiction for each claim he seeks to present in this forum.

/ / /

/ / /

## 2. Plaintiff's FAC Includes Claims With No Nexus to Nevada, Negating Specific Jurisdiction

FLSA claims such as the claims in the FAC require the Court to look at the Fourteenth Amendment to establish specific jurisdiction. *Id.* at 686; *Spitzers v. Golden Techs. Inc.*, No. 2:25-CV-00541-JAD-BNW, 2025 WL 2986693, at *2 (D. Nev. Oct. 22, 2025). The Ninth Circuit has emphasized that in this posture, a federal court "gets" only the jurisdiction a state court would have, and due process requires a proper forum connection for each claim. *Harrington,* 142 F.4th at 686. In *Bristol-Myers,* the Supreme Court held that a court adjudicating non-resident claims against a non-resident defendant may not exercise specific jurisdiction absent a connection between the forum and the specific claims at issue. *Bristol-Myers,* 582 U.S. at 265-268. The mere presence of similar claims by resident plaintiffs does not create jurisdiction over non-resident claims. *Id.* The Court described this as a "straightforward application" of settled principles: what is required – and missing for non-resident claims – is a claim-specific connection to the forum. *Id.* at 265.

Applying those principles, the Ninth Circuit has held that *Bristol-Myers* applies to FLSA collective actions in federal court when jurisdiction rests on specific jurisdiction via FRCP 4(k)(1)(A). *Harrington,* 142 F.4th at 682, 687. Consequently, each opt-in's claim must bear a sufficient connection to the defendant's activities in the forum; a court may not premise jurisdiction over out-of-state claimants on the participation of a single in-state plaintiff. *Id.* This rule follows from the FLSA collective mechanism's character as a mass aggregation of individual claims - participants maintain "individual party status," making the analysis identical to the mass action in *Bristol-Myers*. *Id.* at 686.

In *Harrington*, the Ninth Circuit held that *Bristol-Myers* applies to FLSA collective actions and that a district court must assess specific personal jurisdiction "on a claim-by-claim basis." *Harrington,* 142 F.4th at 682, 687. The court vacated authorization of nationwide notice where the district court had assumed that the presence of one in-forum plaintiff sufficed to establish jurisdiction for all opt-ins' claims. *Id.* at 682.

Here, Plaintiff seeks to certify a "National Collective" covering hourly distribution-center workers in Kentucky and Mississippi, in addition to Nevada. (ECF No. 31, FAC, ¶ 9.)  Plaintiff's

own allegations identify separate distribution centers in Mississippi and Kentucky, and further acknowledge that certain facilities closed in 2024–2025. (*Id.* ¶¶ 18-20.)    The alleged wage-and-hour practices at those facilities concern out-of-state work, out-of-state employees, and out-of-state employment relationships. Those claims do not "arise out of or relate to" Levi's contacts with Nevada, and the mere similarity of alleged FLSA violations across facilities cannot manufacture the claim-specific nexus to Nevada that *Bristol-Myers* and *Harrington* require. *Harrington,* 142 F.4th at 685, 687.

Nor can Plaintiff salvage general jurisdiction over facilities in other states by invoking Levi's business registration in Nevada or the presence of Nevada employees. Corporate registration and doing business in the forum do not create general jurisdiction post-*Daimler*, and the participation of a Nevada plaintiff does not confer jurisdiction over claims arising from out-of-state conduct by out-of-state employees. *Id.* Under Ninth Circuit law, "personal jurisdiction must exist for each claim asserted," and FLSA opt-ins bring individual claims that must satisfy that standard. *Id.* at 687.

*Harrington* makes clear that this Court does not have jurisdiction over out-of-state collective members, should adhere to the majority rule and Ninth Circuit authority, and should limit the case to claims connected to Nevada, and dismiss Plaintiff's Fourth Cause of Action for the reasons set forth above.

## VI.    **CONCLUSION**

Plaintiff's First, Second, and Third Causes of Action should be dismissed because these claims are preempted by the CBA and Nevada law. Further, Plaintiff's Fourth Cause of Action seeks to transform a Henderson-based wage dispute into a multi-state FLSA collective through conclusory allegations that other facilities "functioned similarly," while offering no factual allegations about card readers, pre-shift lines, timekeeping procedures, regular-rate calculations, or bonuses at Kentucky or Mississippi facilities. Because the basis of the FLSA claim outside Henderson is unclear, unsupported, and there is no jurisdiction over those claims, the Court should dismiss the overbroad collective allegations and confine the case to well-pleaded, Henderson-specific claims unless and until Plaintiff pleads concrete, facility-specific facts for Kentucky and

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W Charleston Blvd
Suite 500
Las Vegas, NV 89135
Telephone: 702.360.6800

Mississippi.

DATED this 2nd day of January, 2026.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/ Noel M. Hernandez
Anthony L. Martin
Nevada Bar No. 8177
Noel M. Hernandez
Nevada Bar No. 13893
10801 W. Charleston Blvd.
Suite 500
Las Vegas, NV 89135

*Attorneys for Defendant Levi Strauss & Co.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically transmitted the foregoing **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing, to the following registrant:

> Rachel Mariner
> Jason Kuller

Pursuant to FRCP 5(b), I hereby further certify that service of the foregoing was also made by depositing a true and correct copy of same for mailing, first class mail, postage prepaid thereon, at Las Vegas, Nevada, to the following:

Rachel Mariner
Jason Kuller
Rafii & Associates, P.C.
1120 North Town Center Dr.
Suite 130
Las Vegas, NV 89144

*Attorneys for Plaintiff*

DATED this 2nd day of January, 2026.

/s/ Vincent M. Risucci
AN EMPLOYEE OF OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
10801 W CHARLESTON BLVD
SUITE 500
LAS VEGAS, NV 89135
TELEPHONE: 702.360.6800